UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAPHORA M. LIFRAK,

              Plaintiff,

-against-

NEW YORK CITY COUNCIL,

              Defendant.
------------------------------------------------------------x

04 Civ. 4020 (SHS)

<u>FIRST AMENDED COMPLAINT</u>

<u>PLAINTIFF DEMANDS
A TRIAL BY JURY</u>

RECEIVED MAR 13 2006 U.S.D.C. S.D.N.Y. CASHIERS

Saphora M. Lifrak ("Plaintiff" or "Lifrak"), by her attorneys Vladeck, Waldman, Elias & Engelhard, P.C., complains of Defendant the New York City Council ("Council").

<u>NATURE OF THE ACTION</u>

1. Plaintiff brings this action to remedy discrimination on the basis of sex for defendant's failure to treat male and female employees equally in the terms and conditions of employment in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution (the "Fourteenth Amendment") and the Civil Rights Act of 1871 (42 U.S.C. §1983).

2. Plaintiff also brings this action to remedy discrimination on the basis of sex for defendant's failure to pay male and female employees equal wages in violation of the New York State Labor Law §194 (the "Labor Law").

3. Plaintiff also brings this action to remedy discrimination on the basis of sex, including sexual harassment, in the terms, conditions and privileges of employment, in violation of the New York State Human Rights Law, Executive Law §296 <u>et seq.</u> (the "Executive Law"), and the Administrative Code of the City of New York §8-107 <u>et seq.</u> (the "City Law"); and to remedy unlawful retaliation against plaintiff for engaging in activities protected by the Executive Law and the City Law.

4. Plaintiff seeks legal and equitable relief, liquidated damages and other appropriate relief, pursuant to the Fourteenth Amendment, Executive Law, City Law, and Labor Law.

## JURISDICTION AND VENUE

5. Plaintiff is a resident of New York and worked in New York.

6. Defendant City Council is the legislative body of the City of New York. It is an "employer" as defined by the Executive Law, City Law, and the Labor Law.

7. This Court has subject matter jurisdiction over plaintiff's Fourteenth Amendment and 42 U.S.C. §1983 claims pursuant to 28 U.S.C. §1343(a)(3), (a)(4), 28 U.S.C. §1331. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction of plaintiff's Executive Law, City Law and Labor Law claims.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the unlawful practices complained of herein occurred within the Southern District of New York.

9. Pursuant to § 8-502(c) of the City Law, prior to filing this First Amended Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

## FACTS

10. Lifrak, a woman, is a <u>summa cum laude</u> graduate of New York University. She received her J.D. degree in 1984 from Cardozo Law School. From 1993 through February 2006 she had been employed as an attorney by the New York City Council in the office of the General Counsel.

11. From 1993 through early 2002, plaintiff was in-house Employment Law Counsel; her duties included directing investigations concerning employment discrimination,

advising on disciplinary matters and supervising attorneys and investigators. She also conducted training seminars and drafted civil rights legislation.

12. Since early 2002, she was Counsel to the Committee on Standards and Ethics. Since February 2004, Lifrak was Director of the office of the EEO Counsel in addition to her other duties. In these roles, plaintiff advised the Speaker of the City Council, Council members and senior staff on a full range of legal and policy issues relating to workplace integrity.

13. In late 2001, plaintiff had occasion to meet with then-soon-to-become Council Member Allan Jennings ("Jennings") at a meeting with the then-General Counsel. In early 2002, after becoming a Member Jennings requested plaintiff's help with respect to a potential defamation claim he sought to pursue and with respect to his district office lease. After providing legal advice on the matters, Jennings requested that Lifrak join him for a meal to thank her; she declined. Jennings stated to Lifrak that she "belonged" to him, and continued to seek her legal advice. Jennings also called plaintiff on her personal cell phone or at home "just to talk." Plaintiff requested that Jennings call her during regular business hours, at work.

14. When discussing his financial disclosure forms with Lifrak, who served as the liaison with the Conflicts of Interest Board on this issue, Jennings stated that he was seeking an annulment from his spouse, and therefore did not want to disclose his wife's interests. When Lifrak informed him that he still had to disclose his wife's interests, Jennings told her that he had "sex issues" with her, and that his wife did not want to sleep with him. Lifrak told him he was giving her too much personal information. Jennings then grabbed Lifrak's wrist, recounted his sexual predilections and asked her what her husband could do for her that he could not.

15. Shortly thereafter, Lifrak was told that she was being appointed as Jennings' counsel. Lifrak inquired of General Counsel Thomas L. McMahon ("McMahon")

about this assignment and was told that it came from the Speaker, and that she was to become the counsel to the Civil Service and Labor Committee, which Jennings chaired.

16. Lifrak told McMahon that Jennings' behavior towards her had been inappropriate, and she recounted the specifics of each incident. Lifrak told McMahon that she did not believe it made sense for her to have to work in such close proximity to Jennings.

17. Lifrak also told Deputy Counsel Jay Damashek ("Damashek") and Council Member Helen Sears ("Sears"), Chair of the Committee on Standards and Ethics. Their concern appeared to be greater about Lifrak's workload than about Jennings' conduct.

18. In a meeting scheduled by McMahon, and held in McMahon's City Hall office, Lifrak recounted the incidents with Jennings to Speaker A. Gifford Miller ("Miller").

19. Miller informed Lifrak that he knew he was asking a lot of her, but he insisted that she take on the new role.

20. Upon information and belief, McMahon had Lifrak meet with the Speaker so that Miller would hear Lifrak's concerns about Jennings directly from her. Miller would not have a meeting with a staff attorney to discuss a matter as mundane as workload particularly during budget session, or on a "stated meeting" day.

21. After Lifrak was assigned to Jennings' committee, Jennings called her and told her: "You now belong to me." Despite Lifrak's repeated statements to Jennings that she was an attorney for the City Council, and not for any individual member, he kept repeating that she "belonged" to him.

22. During one meeting, Jennings repeatedly asked Lifrak to join him for a meal in a "quiet dark place" so that they could get to know each other and "relax." Lifrak refused each time. Jennings and Lifrak again discussed the need for Jennings to complete financial disclosure forms concerning his wife; Jennings told her that he was seeking an

annulment because "my wife doesn't want to live with me as a wife. I know what I like to do in sex, and she won't do it." Lifrak ended the meeting.

23. Lifrak immediately reported Jennings' behavior to McMahon.

24. Jennings then demanded that Lifrak, who is Jewish, work on Yom Kippur, stating: "I don't care if it's a Jew holiday."

25. When Lifrak refused to honor a request Jennings made that she deemed inappropriate, he responded: "You're a fucking woman just like all the rest. You're a fucking woman just like my wife. . . ."

26. Because McMahon was on vacation, Lifrak called Forrest Taylor ("Taylor"), Chief of Staff, to inform him of Jennings' most recent conduct and to request, again, that she be relieved of her responsibility for Jennings' committee. Lifrak was asked to submit a memorandum, which she did, on September 26, 2002. The memorandum, addressed to Taylor, is entitled "An account of Council Member Allan W. Jennings' inappropriate behavior towards me." Lifrak was removed as counsel to Jennings' committee in late October 2002.

27. On October 4, 2002, while Lifrak was on vacation, McMahon called Lifrak at home, on an unlisted number, to berate her for including the facts concerning the Speaker, and himself, in the memorandum. He asked whether her memorandum now had to go to the Standards and Ethics Committee. Lifrak responded that, because she was involved, she was conflicted from advising on the issue, but believed that the Memorandum should be provided to the Committee.

28. McMahon became irate, and said that if she insisted on pursuing the matter, he and the Speaker would make sure her name would "be out there, and not in a good way." Lifrak responded that based on what he was saying, she was concerned that she was going to be retaliated against.

29. McMahon responded that there would not be retaliation if Lifrak kept the situation confidential. He repeated that he would not let Lifrak "hurt" either the Speaker or him.

30. Later in the fall of 2002, McMahon told Lifrak that he was "told" to apologize to her. She said it was a "pol" [politician's] apology, and that she wanted something in writing; he said that would not happen.

31. In this conversation Lifrak also raised the issue of the salary disparity between her and the male lawyers, an issue that she had earlier raised with McMahon. Lifrak's salary was substantially lower than that of the male lawyers performing the same or similar work. Other than Lifrak and one other female attorney, all of the attorneys in the General Counsel's office were male and, upon information and belief, the other female attorney in the office was also paid less than the male attorneys. Lifrak discussed the salary disparity with McMahon because the General Counsel has authority over personnel and policy matters in the General Counsel's office.

32. Upon information and belief, some of the male lawyers who received higher salaries than Lifrak, had been removed from prior positions within the City Council before they joined the General Counsel's office.

33. McMahon responded that plaintiff would never get a raise as long as he was General Counsel because she never should have put in writing his or the Speaker's role in connection with her complaint about Jennings. She said she only wrote the truth, and asked if she was being denied a well-deserved pay increase for having told the truth. McMahon repeated "no raise" and walked away.

34. Since March 2002, shortly after McMahon took office, Lifrak repeatedly requested that the Council institute revised policies and training concerning sexual harassment.

215494 v2

6

Upon information and belief, a Council Member was told there was no money in the budget for such activities.

35. Upon information and belief, in late 2003, two female members of Jennings' staff complained about sexual harassment. The Speaker and/or McMahon hired ADR Associates to investigate those complaints.

36. In January 2004, ADR Associates was retained to investigate Lifrak's complaints as well. Lifrak met with Margaret Shaw and Carol Wittenberg of ADR Associates for several hours and provided them with contemporaneous records of events. Lifrak was assured that the process was confidential.

37. Although the report issued by ADR Associates in March 2004 ("ADR Report") refers to meetings with Lifrak, McMahon and "numerous other witnesses," it does not reflect many of those witnesses' statements.

38. As McMahon had warned Lifrak that he would not let her "hurt" the Speaker or himself, the ADR Report he commissioned attempts to do just that. Although the ADR Report was considered to be "confidential," McMahon openly distributed it to the press in May 2004.

39. Upon information and belief, to date, there has been no action taken against McMahon for his providing confidential documents to the press.

40. The ADR Report is flawed in many respects. For example, it credits Lifrak's version of events with respect to Jennings, but credits McMahon and Miller on all other disputed issues, even though the ADR Report does not state that Miller was even interviewed.

41. Even though the ADR Report takes pains to show McMahon and Miller in a positive light, it supports many of Lifrak's complaints. For example, the ADR Report finds that:

a. Miller acknowledged he was "asking a lot" of Lifrak to "take on Jennings";

b. At the latest, Miller was aware of Lifrak's sexual harassment complaint in late August or September 2002;

c. Although denying doing anything wrong, that McMahon "apologized to [Lifrak] verbally several times";

d. The October 2002 telephone conversation with McMahon was "highly charged" and that "Lifrak may have drawn the conclusion that McMahon was threatening her";

e. McMahon represented another attorney's (male) annual salary to be the same as Lifrak's when it was actually $20-$30,000 higher, even though they were both admitted to the bar at the same time;

f. "There is evidence of a significant disparity between [Lifrak's] salary and the salaries of male attorneys";

g. At the time Lifrak was appointed to Jennings' committee, Lifrak "may even have indicated to McMahon that Jennings' conduct was inappropriate at times, and McMahon may have failed to listen or encourage her to be more specific in sharing her experiences."

42. In sum, although the ADR Report mischaracterized or ignored statements from witnesses, including other Council Members, who buttressed Lifrak's allegations, it reveals that McMahon and Miller knew the details of Lifrak's sexual harassment complaint in late August 2002 and that McMahon made good on his threat to keep Lifrak's salary substantially lower than that of the male attorneys who performed substantially similar work.

43. Incidents of retaliation include public statements by the Speaker and McMahon that Lifrak had lied. As an attorney, particularly one responsible for issues relating to ethics, Lifrak was damaged both personally and professionally by this concerted effort to smear her.

44. After Lifrak filed her Complaint in this Court, the intentional discrimination and retaliation continued. Lifrak was treated like a pariah. As one example, rather than talk to her, the Acting General Counsel communicated with Lifrak by interoffice mail or e-mail even though his office was three doors away from hers.

45. Despite the continuing discrimination and retaliation, in May 2004 Lifrak received from the New York City Conflicts of Interest Board the prestigious Sheldon Oliensis Ethics in City Government Award recognizing her personally for the promotion of ethics in New York City Government. Recipients before and after Lifrak were agencies, not individuals, which only underscored the achievement. Agencies that have received the Award have publicized the honor; the Council ignored Lifrak's receipt of this prestigious Award.

46. Male lawyers were given opportunities denied to women to become known to Council members and others at City Hall. Men were invited to meetings and sessions at City Hall while Lifrak was kept in the Counsel's office and told to wait by the phone in case there were questions.

47. Lifrak was denied a raise while others in the Counsel's office were given substantial raises.

48. In or about October 2004, Lifrak started receiving pornography on her work computer. The messages started with ads for Viagra and escalated to the edge of child pornography. Despite numerous complaints to the Acting General Counsel and discussions with the City Council's Computer Services Division, plaintiff received these images on a virtually

daily basis. When nothing was done and Lifrak again spoke to the Acting General Counsel, he said "your husband is a prosecutor, have him deal with it." Lifrak's husband's jurisdiction is Medicaid fraud.

49. The Council's review of Jennings' conduct commenced on September 2004.

50. On February 17, 2006, Lifrak was fired. Lifrak had exhausted her sick leave and annual leave balances as a direct result of the stress she suffered.

FIRST CLAIM FOR RELIEF

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 of the Complaint with the same force and effect as if set forth herein.

52. Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's unlawful practices unless and until this Court grants relief.

53. By the acts and practices described above, defendant, in violation of 42 U.S.C. §1983 and the Fourteenth Amendment, has discriminated against plaintiff by implementing its official policy of paying male employees higher wages than females including plaintiff, providing male employees with greater opportunities than female employees and ignoring female employees' complaints of sexual harassment and retaliation.

SECOND CLAIM FOR RELIEF

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 of this Complaint with the same force and effect as if set forth herein.

55. The above discriminatory acts and practices of defendant constitute unlawful employment practices within the meaning of the Executive Law.

56. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

### THIRD CLAIM FOR RELIEF

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint with the same force and effect as if set forth herein.

58. The above discriminatory acts and practices of the defendant constitute unlawful employment practices within the meaning of the City Law.

59. Defendant engaged in these discriminatory practices with malice and with reckless indifference to plaintiff's rights protected under the City Law.

60. As a result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

### FOURTH CLAIM FOR RELIEF

61. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint with the same force and effect as if set forth herein.

62. By the acts and practices described above, defendant, in violation of the Executive Law, has retaliated against plaintiff for her opposition to unlawful employment practices.

63. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

### FIFTH CLAIM FOR RELIEF

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 of this Complaint with the same force and effect as if set forth herein.

65. By the acts and practices described above, defendant, in violation of the City Law, has retaliated against plaintiff for her opposition to unlawful employment practices.

66. Defendant engaged in these retaliatory practices with malice and with reckless indifference to plaintiff's rights protected under the City Law.

67. As a result of defendant's retaliatory acts, plaintiff has suffered and will continue to suffer irreparable injury, monetary damage and damages for mental anguish, emotional distress and humiliation unless and until this Court grants relief.

## SIXTH CLAIM FOR RELIEF

68. Plaintiff repeats and realleges each and every allegations contained in paragraphs 1 through 67 of this Complaint with the same force and effect as if fully set forth herein.

69. By the acts and practices described above, defendant has discriminated against plaintiff by paying male employees higher wages than plaintiff was paid for equal work in a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, in violation of the New York State Labor Law.

70. Defendant knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for plaintiff's statutorily protected rights.

71. Plaintiff suffered lost wages as a result of defendant's willful and unlawful conduct.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. declaring that the acts and practices complained of herein are in violation of the Executive Law, the City Law, the Labor Law, the Fourteenth Amendment, and 42 U.S.C. §1983;

b.  enjoining and permanently restraining these violations of the Executive Law, the City Law, the Labor Law, the Fourteenth Amendment, and 42 U.S.C. §1983;

c.  directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d.  directing defendant to place plaintiff in the position she would be in but for defendant's discriminatory and retaliatory treatment of her and to make her whole for all earnings she would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, bonuses, pension and other lost benefits;

e.  directing defendant to pay plaintiff compensatory damages and damages for her mental anguish and humiliation;

f.  directing defendant to pay plaintiff liquidated damages, for its willful conduct and/or intentional disregard of, and/or reckless indifference to, plaintiff's rights under the Fourteenth Amendment and Labor Law;

g.  awarding plaintiff the costs of this action together with reasonable attorneys' fees and interest; and

h.  awarding such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
       March 13, 2006

                         VLADECK, WALDMAN, ELIAS &
                         ENGELHARD, P.C.

By: /s/ Anne Vladeck
     Anne C. Vladeck (AV 4857)
     Attorneys for Plaintiff
     1501 Broadway, Suite 800
     New York, New York 10036
     (212) 403-7300

04 Civ 4020 (SHS)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAPHORA M. LIFRAK,

      Plaintiff,

  -against-

NEW YORK CITY COUNCIL,

      Defendant.

## FIRST AMENDED COMPLAINT

**VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.**

*Attorneys for* Plaintiff

Office and Post Office Address
**1501 BROADWAY
NEW YORK, N.Y. 10036**
(212) 403-7300

To

Attorney(s) for

Service of a copy of the within              is hereby admitted.
Dated,
                                      Attorney(s) for

Sir: Please take notice
<u>NOTICE OF ENTRY</u>
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on             200

<u>NOTICE OF SETTLEMENT</u>
that an order            of which the within is a true copy will be presented for
settlement to the HON.                         one of the judges
of the within named court, at
on the     day of        200    at      M.
Dated,                     Yours, etc.

**VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.**

Attorneys for

Office and Post Office Address
**1501 BROADWAY
NEW YORK, N.Y. 10036**

To

Attorney(s) for    LAW ENFORCEMENT BUREAU
            ON HUMAN RIGHTS
           NYC COMMISSION